IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TODD COPENHAVER and AMBER COPENHAVER,<br><br>               Plaintiffs,<br><br>vs.<br><br>CAVAGNA GROUP S.p.A OMECA DIVISION, AMERIGAS PROPANE, L.P., ALBERTSONS, LLC., and DOES 1-10,<br><br>               Defendants. | CV 19-71-BLG-SPW-TJC<br><br><br>**ORDER** |

Before the Court are multiple motions.  In addition to the parties' motions for summary judgment, which will be addressed by separate findings and recommendations, currently pending are Plaintiffs Todd and Amber Copenhaver's motions for Rule 37 Sanctions against Defendants (Docs. 105, 110), for Leave to File Fourth Amended Complaint (Doc. 115), and to Seal (Doc. 209); Defendants AmeriGas Propane L.P. and Albertsons Companies Motion for Leave to File a Sur-Reply in Opposition to the Motion to Amend (Doc. 153); Defendant Cavagna Group S.p.A. Omeca Division's Motion to Compel Rule 35 Examinations (Doc. 132), and to Seal (Doc. 212).  Several of the motions were argued during a motions hearing on July 13, 2021.  (*See* Doc. 227.)  All matters are fully briefed and ripe for review.

Having considered the parties' submissions and oral arguments, Copenhavers' motions for sanctions are DENIED and motion to amend is GRANTED; AmeriGas and Albertsons' motion to file sur-reply is GRANTED; Cavagna's motion to compel is GRANTED, and Plaintiffs and Cavagna's motions to seal are GRANTED.

## I.      Procedural Background

Copenhavers filed this suit on June 25, 2019 against Defendants Cavagna North America Inc., AmeriGas Propane, L.P., Albertsons LLC, and Blue Rhino Corporation, alleging various claims related to the purchase and use of an exchangeable propane cylinder tank that ultimately caught fire and injured the Copenhavers.  (Doc. 1.)  A preliminary pretrial conference was held on November 5, 2019; the subsequently issued Scheduling Order set the deadline for amended pleadings and joinder of parties for February 5, 2020.  (Docs. 11, 17.)

After conferring, the parties agreed to dismiss the Complaint without prejudice to correctly name the corporate defendants.  (Doc. 18.)  Plaintiffs filed an Amended Complaint on November 14, 2019, naming Cavagna Group S.p.A Omeca Division ("Cavagna"), AmeriGas Propane, L.P. ("AmeriGas"), and Albertsons Companies, Inc. ("Albertsons") as defendants, and dropping Blue Rhino Corporation from the suit.  (Doc. 19.)  Plaintiffs subsequently filed an unopposed motion to file the Second Amended Complaint on February 4, 2020,

seeking leave to add Ningbo Wanan Co., Ltd as a defendant.  (Doc. 40.)  The motion was granted; Plaintiffs filed the Second Amended Complaint on February 5, the deadline for amended pleadings.  (Docs. 41, 42.)  The same day, Plaintiffs filed a motion to file the Third Amended Complaint, seeking leave to add Running Supply, Inc. as a defendant.  (Docs. 44-46.)  The Court granted the motion; Plaintiffs filed the Third Amended Complaint on February 12, 2020.  (Docs. 47, 48.)  Plaintiffs subsequently dismissed their claims against Ningbo Wanan and Runnings Supply Inc. on April 29, 2020.  (Docs. 73, 74.)  Thus, the remaining defendants are Cavagna, AmeriGas, and Albertsons (collectively, "Defendants").

A status conference was held on May 4, 2020 regarding multiple motions and issues related to discovery, sanctions, and vacating/amending the Scheduling Order.  (Docs. 81, 83.)  Insofar as amending the Scheduling Order, all amended dates related to discovery, settlement, and motions deadlines; the deadline for amendments to pleadings remained the same.  (Doc. 84.)  The new discovery deadline was set at November 6, 2020.  (*Id.* at 3.)

Plaintiffs filed the instant motion seeking leave to file the Fourth Amended Complaint on December 2, 2020.  (Doc. 115.)

## II.   Plaintiffs' Motion to Amend

Copenhaver's Third Amended Complaint sets forth a claim for strict products liability and punitive damages, and states that "Defendants and each of

3

them were at all material times in the business of selling the Product or regulator and sold the Product or regulator in a defective condition unreasonably dangerous to the consumers and users." (Doc. 48 at ¶ 31.) As to the specific defect, Copenhavers alleged that fire on the propane tank was caused by a leak in the rubber sealing gasket inside the valve on the tank. (*Id.* at ¶ 20.) Copenhavers further alleged that the leak was caused by the defective design of the valve and defective material used in the sealing gasket. (*Id.*)

On August 3, 2020, Cavagna disclosed its liability experts, who asserted that the propane leak did not come from the valve itself, but from the base or "spud" of the valve where it connects to the cylinder. Albertsons and AmeriGas joined in the disclosure and adopted the conclusions of Cavagna's experts. Copenhavers assert they were unaware that Defendants intended to rely on the "spud theory" to defend the claim until the experts were disclosed.

Copenhavers responded by submitting a rebuttal expert report on September 4, 2020, asserting that the evidence was inconsistent with the spud theory. But the report further stated that even if the leak originated at the spud, it was nevertheless still due to a defective and unreasonably dangerous condition, which would have existed at the time the tank was sold to Copenhavers. In other words, Copenhavers asserted that regardless of whether the leak originated from the valve or from the

spud, it was a defective, unreasonably dangerous product for which the Defendants were strictly liable.

Thereafter, a disagreement apparently developed between Copenhavers and AmeriGas and Albertsons over whether the alternative spud theory was encompassed within the allegations of the Third Amended Complaint. Copenhavers thus specifically included the theory in their proposed Fourth Amended Complaint, submitted with their motion for leave to amend on December 2, 2020.  (Doc. 117-1.)  AmeriGas and Albertsons object to the amended pleading and assert they will be prejudiced if Copenhavers are permitted to recover on this alternative theory at trial.  Copenhavers counter that the amendment merely reflects the rebuttal expert report timely provided to Defendants in September 2020, following Defendants own disclosure of the theory in August 2020.

### A.    Legal Standard

Fed. R. Civ. P. 15(a)(2) governs the amendment of pleadings before trial and provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Where the motion to amend comes after a scheduling order has been imposed, however, Rule 16(b) must also be considered.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

Rule 16(b)(4) requires "good cause" to modify a scheduling order. "Unlike Rule 15(a)'s liberal amendment policy, which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609; *Coleman*, 232 F.3d at 1294. Prejudice to the opposing party may provide an additional reason to deny a motion to amend, but "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "If that party was not diligent, the inquiry should end." *Id.*; see also, *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th Cir. 2013) (upholding denial of motion to amend where "the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action").

If good cause has been shown, the Court then determines whether the requirements of Rule 15(a)(2) are satisfied. *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). The Ninth Circuit directs courts to consider the following five factors to assess whether to grant leave to amend under Rule 15(a)(2): bad faith, undue delay, prejudice to the opposing party, futility of amendment, and previous amendments. *Western States*, 715 F.3d at 738; *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Prejudice to the opposing party carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048,

1052 (9th Cir. 2003); *Kelly Supply, LLC v. Econ. Polymers & Chemicals*, 2014 WL 2961083, at *3 (D. Mont. June 30, 2014).

### B.    Discussion

#### 1.    Rule 16(b)

The Court finds Plaintiffs have satisfied the good cause standard under Rule 16(b).  The November 5, 2019 Scheduling Order set the deadline for amended pleadings for February 5, 2020.  (Doc. 17.)  Plaintiffs' previous amended complaints were timely.  When Cavagna disclosed its expert report in August 2020, to which AmeriGas and Albertsons' joined and adopted, Plaintiffs learned that Cavagna would argue that the spud, not the valve seal, was the source of the leak that caused the fire that ultimately led to the Copenhavers' injuries.  At that point, Plaintiffs obviously could not have met the amended pleadings deadline to specifically incorporate Defendants' spud leak theory, since it had expired six months prior.  Nevertheless, Plaintiffs believed their Third Amended Complaint sufficiently encompassed any defect, including the spud.  But AmeriGas and Albertsons apparently disagreed and asserted that the operative complaint was narrowly focused on the face valve leak only.  Copenhavers thus specifically included the alternative theory in their Fourth Amended Complaint.

A court can deny a motion for leave to amend if the plaintiff is not diligent in seeking amendment.  In *Johnson*, for example, the Ninth Circuit affirmed denial

of a motion to amend when the plaintiff ignored the defendant's answer to the complaint and responses to interrogatories that "amply indicated that [the defendant] did not own and operate the ski resort" where his injuries took place and therefore missed the opportunity to name the proper defendant before the deadline. *Johnson*, 975 F.2d at 609.  The court held that "[f]ailing to heed clear and repeated signals that not all the necessary parties had been named in the complaint does not constitute diligence." *Id.*

That is not the case here.  Copenhavers received notice of Defendants' spud leak theory with the disclosure of their expert report, well beyond the amended pleadings deadline.  They timely responded to the disclosure with their own expert report, which both refuted the theory and made clear that even if the theory were true, the product was still defective.  After AmeriGas and Albertsons' voiced objection to the inclusion of the theory under the existing pleadings, Plaintiffs moved to amend their complaint.  The Court finds Plaintiffs were diligent in their efforts to respond to Defendants newly disclosed spud theory and have satisfied Rule 16(b)'s good cause standard.

### 2.    Rule 15(a)

The Court also finds that Copenhavers have satisfied the requirements of Fed. R. Civ. P. 15(a).  For the same reasons discussed above, the Court does not find bad faith or undue delay in seeking leave to amend.

The proposed amendment is also not futile.  The test for futility is tantamount to the Rule 12(b)(6) standard in which "no set of facts can be proven under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Kelly Supply*, 2014 WL 2961083, at \*3 (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).  Copenhavers have simply incorporated Defendants' own theory of how the fire originated, and alleged that if Defendants' theory is correct, the product would have been sold in a defective condition unreasonably dangerous to a user and consumer.  Copenhavers allegations are sufficient to state a claim under Montana strict products liability law.

Defendants have also not established undue prejudice.  Undue prejudice equates to a substantial prejudice or substantial negative effect. *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)).  Adding claims that greatly alter the nature of the litigation or require defendants to undertake an entirely new course of defense at a late hour constitutes substantial prejudice.  *Id.*  The Ninth Circuit has also noted that late amendments asserting new theories are viewed unfavorably "when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th

Cir. 1986); *Coleman*, 232 F.3d at 1295.  In *Acri*, for example, the court affirmed the rejection of a motion for leave to amend when the plaintiffs' attorney admitted to delaying a new cause of action for tactical reasons until after summary judgment.  *Id.*  In *Coleman*, the court also affirmed denial of a motion to amend when the plaintiffs possessed a statistical report prior to an earlier amended complaint but offered no explanation why the information was not integrated in the prior amended complaint and delayed to a subsequent motion to amend.  *Coleman*, 232 F.3d at 1295.

Here, contrary to Defendants' arguments, Copenhavers have not changed their cause of action.  Copenhavers have based their claim on strict products liability since the initial Complaint was filed, claiming "Defendants … sold the Product in a defective condition."  Therefore, Copenhavers' grounds for recovery remains the same – strict products liability under Mont. Code Ann. § 27-1-719. The only thing that has changed is the inclusion of a possible alternative theory relative to the source of the propane leak.  But Defendants can hardly be heard to argue they were surprised and prejudiced by the inclusion of this theory, since it is the Defendants' own theory of how the fire originated.  The Defendants obviously knew this theory would be injected into this case long before the Copenhavers.

AmeriGas and Albertsons argue, however, that they will be substantially prejudiced by the amendment.  They argue that they made a tactical decision not to

retain their own experts because they "would either be entitled to common law indemnity from Cavagna as the supplier of a defective component part if Plaintiffs recovered, or they would face no liability if Cavagna proved the valve design was not defective." (Doc. 120 at 25.) Thus, AmeriGas and Albertsons argue that if Copenhavers are restricted to the valve seal theory they "would face no strict liability for other alleged defects such as the purported 'spud leak,' now they could." (*Id.*) They also argue they have lost "the right to challenge the legal support for a strict liability claim for a latent defect in a used product," which they maintain is an open question in Montana. (*Id.* at 24.)

But the fact remains that the spud theory was injected into this case by Defendants. AmeriGas and Albertsons now appear to be arguing that the theory they adopted and endorsed subjects them to liability, where they had none previously. Surely, Defendants cannot expect to rely on this theory to defend against the valve theory but prevent the Copenhavers from responding to their position and assert that Defendants are liable under their own theory as well. Additionally, it is not clear why AmeriGas and Albertsons were prevented from raising the legal argument that they are not strictly liable under Montana law for selling a used product with a latent defect. That defense appears to have been available to them regardless of the Copenhavers' theory on how this fire started.

11

The final factor for the Court to consider is whether Plaintiffs have previously amended their complaint. *Western States*, 715 F.3d at 738; *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Plaintiffs have amended their complaint three times, primarily to add or dismiss parties or to accurately name the corporate entities. But the Copenhavers did not fail to amend their pleading to incorporate the current allegations. As discussed above, Copenhavers could not have incorporated their proposed changes into their previous amendments, because they did not have knowledge of Defendants' theory.

In sum, given that Rule 15(a)(2)'s "when justice so requires" standard is to be applied with "extreme liberality," the Court finds Plaintiffs' proposed Fourth Amended Complaint would facilitate a decision on the merits and the motion is granted. *Eminence Capital*, 316 F.3d at 1051; *Adam v. Hawaii*, 235 F.3d 1160, 1164 (9th Cir. 2000); *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981); *Bonin*, 59 F.3d at 845; *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987).

The Court is mindful, however, that Copenhavers did not move to amend until after experts had been disclosed and after the discovery deadline. Therefore, AmeriGas and Albertsons may file a motion to reopen discovery on a very limited basis and/or motion to extend the motions deadline for the limited purpose of raising the used product issue. The motion must be filed within 14 days of this order. Such a motion will not be granted, however, unless AmeriGas and

Albertsons can show precisely what additional discovery or motion is necessary, specifically how long it will take to accomplish, and establish why they were previously prevented from conducting the discovery or filing the motion.

## III.    AmeriGas and Albertsons' Motion to File Sur-Reply

Defendants AmeriGas and Albertsons moved the Court to file a sur-reply to Plaintiffs' reply in support of its motion to amend.  (Doc. 153.)  In preparing for oral argument, the Court did review the sur-reply (Doc. 153-1).  Therefore, the motion will be granted.  The parties do not need to re-file the document; no further action is required.

## IV.    Plaintiffs' Motions for Rule 37 Sanctions

For reasons expressed on the record at oral arguments, Plaintiffs Motions for Rule 37 Sanctions against Cavagna (Doc. 105) and AmeriGas and Albertsons (Doc. 110) are denied.

## V.    Cavagna's Motion to Compel Rule 35 Examinations

Cavagna moves the Court to compel Plaintiffs to produce Todd Copenhaver for Rule 35 examinations by Dan Thompson for a vocational rehabilitation and life care assessment, and by Dr. Debra Sheppard for a psychological assessment. (Doc. 132.)

Fed. R. Civ. P. 35(a) permits a court to order a party whose mental or physical condition is in controversy to submit to a physical or mental examination

by a suitably licensed or certified examiner, as well as specify the time, place, manner, conditions, scope, and identity of the examiner. *Daum v. Allstate Fire and Casualty Ins. Co.*, 2014 WL 12600126, *2 (D. Mont. Oct. 28, 2014). The party requesting the examination has the burden to establish that "(1) the medical condition as to which the examination is sought is really and genuinely in controversy; and (2) that good cause exists for ordering each particular examination." *Id.* (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)).

The parties agree that Todd Copenhaver's medical condition is genuinely in controversy. (Docs. 154 at 2; 161 at 2.) The parties dispute, however, whether there is good cause for the proposed examinations, the scope and manner of the examinations, and whether Plaintiffs' counsel is entitled to observe. (Doc. 161 at 2.) The Court will address each issue in turn.

### A.    Good Cause

Cavagna asserts that Plaintiffs' vocational rehabilitation and life care expert, Michael R. Butz, is going to testify, and thus an examination by Mr. Thompson will allow Cavagna to make its own assessment of Todd's alleged vocational impairments and restrictions. (Doc. 154 at 11.) As to Dr. Sheppard, Cavagna argues that Plaintiffs' own doctors will testify, a review of their records is insufficient, and his emotional distress is ongoing, thus good cause has been shown for an examination. (*Id.* at 12-14.)

14

Plaintiffs argue there is no good cause for Mr. Thompson's examination because he is from Canada, when numerous vocational experts can be found in Montana.  They also assert Defendants can obtain the information by other means, such as from Todd's records.  (Doc. 161 at 10-11.)  Plaintiffs do not assert a specific argument opposing Dr. Sheppard.  (See generally, *Id.*)

The Court finds Cavagna should have the opportunity to adduce relevant information to meet Plaintiffs' own experts relative to Todd's ongoing vocational and mental condition, which are squarely at issue in his claimed damages.  While Defendants have access to Todd's medical records, Plaintiffs have their own experts to establish the extent of his injuries and damages.  "One of the purposes of Rule 35 is to 'level the playing field' between parties in cases where a party's mental condition is at issue." *Elmansoury v. City of Garden Grove*, 2019 WL 2871159, at *2 (C.D. Cal. Mar. 26, 2019).  Further, Mr. Thompson's residence is irrelevant to his expertise, which is supported by his CV and extensive experience testifying in the United States as a vocational expert.  (*See* Doc. 154-1.)   Any issues with respect to credibility are for the trier of fact. *Wood v. Old Trapper Taxi*, 952 P.2d 1375, 1381 (Mont. 1997) ("Juries have an uncanny ability to evaluate the credibility of a witness, especially an expert.").

/ / /

/ / /

15

**B.     Scope and Entitlement to Observe**

Plaintiffs argue that Cavagna has failed to properly define the scope and

manner of its proposed Rule 35 exams.  (Doc. 161 at 13.)  This argument

misconstrues the requirements of Rule 35.  In *Daum*, this Court rejected the same

argument, reasoning:

> Rule 35 states that an "*order* ... must specify the time, place, manner,
> conditions, and scope of the examination, as well as the person or
> persons who will perform it."  Fed. R. Civ. P. 35(a)(2)(B) (emphasis
> added [in original]). The specific requirements in Rule 35(a)(2)(B) thus
> do not apply to the contents of the movant's motion, but to the contents
> of the Court's order.

*Daum*, 2014 WL 12600126, at *2.

Plaintiffs also assert entitlement for the presence of counsel during the

"history" portion of the examination.  (Doc. 161 at 5, FN1.)  But there is a

substantial question whether Plaintiffs have any such entitlement under the federal

rules.  "Rule 35 does not provide for the presence of counsel, and the majority of

federal courts to address this issue have concluded that an attorney does not have

the right to be present during the examination."  *Barrett v. Great Hawaiian*

*Cruises, Inc.*, 1997 WL 862762, at *2 (D. Haw. Sept. 17, 1997) (collecting cases[1]);

---

[1] See, e.g., *Tirado v. Erosa*, 158 F.R.D. 294 (S.D.N.Y.1994); *Wheat v. Biesecker*,
125 F.R.D. 479 (N.D.Ind.1989); *Di Bari v. Incaica Cia Armadora*, 126 F.R.D. 12
(E.D.N.Y.1989); *McDaniel v. Toledo, Peoria and Western Railroad Co.*, 97 F.R.D.
525 (C.D.Ill.1983); *Warrick v. Brode*, 46 F.R.D. 427 (Del.1969); *Dziwanoski v.
Ocean Carriers Corp.*, 26 F.R.D. 595 (Md.1960).

16

see also, *Tarte v. United States*, 249 F.R.D. 856, 859 (S.D. Fla. 2008) (collecting cases).

In *Barrett*, the court noted two reasons to deny a party the right to counsel during a medical examination: presence of counsel injects partisanship into "what should be a wholly objective inquiry," and presence of counsel creates a potential ethical problem if the attorney has to testify as a witness to impeach the examining physician. *Id.*

In *Tarte*, the court noted federal courts have required the party seeking to have an observer present to establish "good cause" because the presence of a third party is not typically necessary or proper. *Tarte*, 249 F.R.D. at 859. See also, *Mayorga Martinez v. United States,* 2019 WL 4277803, at *4 (C.D. Cal. Apr. 10, 2019) (suggesting establishing good cause is the "majority rule.")

In any event, the *Tarte* court and many others suggest that Rule 35 and the adversarial process provide safeguards to plaintiffs, such as a Rule 35 examination report, opportunity to depose the physician/expert, cross-examination, introduction of contrary expert evidence, and the opportunity to exclude questioning at trial. *Tarte*, 249 F.R.D. at 859.

In this case, however, the parties appear to have stipulated to the presence of Plaintiffs' Counsel during the "history" portion of the examination. Thus, the parties' stipulation to the presence of Plaintiffs' Counsel during the history portion

of the examinations will be permitted.  No interference in taking Copenhaver's history will be permitted.  Counsel's presence at the evaluation portions of the examinations will not be permitted.

Accordingly, because Cavagna has satisfied the good cause requirement of Rule 35, this Court will order Todd Copenhaver to submit to the independent medical examinations requested.  The examinations will be conducted by vocational and life care expert Dan Thompson and by psychologist Debra Sheppard.  The examinations will be conducted at a place mutually convenient for Todd Copenhaver and the examiners, but if the parties are unable to agree upon a location, the examinations will be conducted in Billings, Montana.  The examinations will be conducted within 30 days from the date of this order.  The scope of the examination by Mr. Thompson will be the same as typically conducted in a vocational rehabilitation and life care examination, and similar to that performed by Plaintiffs' expert, Michael R. Butz.  The scope of the neuropsychological examination will be the same as is typical for a neuropsychological examination conducted by Dr. Sheppard.  The Court will not otherwise limit the scope of the examinations.  As discussed above, Plaintiffs will have the opportunity to challenge any findings from the examinations through deposition, cross-examination at trial, introduction of contrary expert evidence, and the opportunity to seek exclusion or limitation of evidence at trial.

Once arrangements for the examinations are made, the parties shall file a proposed schedule for disclosure of reports of the examinations, and a proposed deadline for taking any depositions of the witnesses.

## VI.    Motions to Seal

Copenhavers have filed a renewed motion to seal certain documents (Doc. 209); Cavagna has also filed a motion to seal certain documents (Doc. 212).  Both motions are unopposed and will be granted.

## VII.    Conclusion

IT IS ORDERED that:

1.    Plaintiffs motion to amend (Doc. 115) is GRANTED.  Plaintiffs must promptly file the Fourth Amended Complaint as directed by L.R. 15.1.  AmeriGas and Albertsons may file a motion to reopen discovery on a limited basis and/or to reopen the time for filing specified motions within 14 days of the date of this order. Copenhavers will be given 14 days after filing any such motion to respond;

2.    Defendants AmeriGas and Albertsons' Motion to File Sur-Reply (Doc. 153) is GRANTED to the extent that the Court has already considered the brief.  No further steps are necessary;

3.    Plaintiffs Motions for Rule 37 Sanctions (Docs. 105, 110) are DENIED;

4.    Defendant Cavagna's Motion to Compel Rule 35 Examination (Doc. 132) is GRANTED under the terms and conditions set forth above;

19

5.      Plaintiff's motion to file documents under seal (Doc. 209) is GRANTED;

and

6.      Cavagna's motion to file documents under seal (Doc. 212) is GRANTED.

**IT IS ORDERED**.

DATED this 27th day of July, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge