IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TODD COPENHAVER and AMBER COPENHAVER, | CV 19-71-BLG-SPW-TJC |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| CAVAGNA GROUP S.p.A OMECA DIVISION, AMERIGAS PROPANE, L.P., ALBERTSONS COMPANIES, INC., and DOES 1-10, | |
| Defendants. | |

Plaintiffs Todd and Amber Copenhaver ("Copenhavers") brought this action against Defendants Cavagna Group S.p.A Omeca Division, AmeriGas Propane, L.P., Albertsons Companies, Inc., and Does 1-10 (collectively, "Defendants"), alleging claims for strict products liability and punitive damages relating to burns and other injuries Plaintiffs sustained from a propane gas cylinder fire.  (Doc. 48.)

Before the Court are multiple motions for summary judgment.  Defendant Cavagna Group S.p.A Omeca Division ("Cavagna") moves for summary judgment on Copenhavers' claims.  (Doc. 134).  Defendants AmeriGas Propane, L.P. ("AmeriGas") and Albertsons Companies, Inc. ("Albertsons") move for partial summary judgment on punitive damages.  (Doc. 136.)  Last, the Copenhavers present three motions for partial summary judgment: (1) as to affirmative defenses

1

other than misuse and assumption of risk (Doc. 140), (2) as to misuse and assumption of risk (Doc. 142), and (3) as to liability (Doc. 144). The motions have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B) and are fully briefed. The Court held oral arguments on July 13, 2021 in tandem with other pending motions, which will be addressed by separate order.

Having considered the parties' submissions, the Court recommends that Cavagna's motion be DENIED; AmeriGas and Albertsons' motion as to punitive damages be DENIED as to AmeriGas and GRANTED as to Albertsons; Copenhavers' motion as to affirmative defenses other than misuse or assumption of risk be GRANTED; Copenhavers' motion as to misuse and assumption of risk be GRANTED; and, finally, Copenhavers' motion as to liability be DENIED.

## I.    Factual Background[1]

On September 3, 2017, the Copenhavers attended a family barbeque at the home of Richard Burris in Glendive, Montana. Burris attempted to light the gas grill but discovered the propane gas cylinder was empty. He checked the regulator and hose assembly, turned off the grill, and intended on going to the store to get a new cylinder. Todd Copenhaver offered to retrieve a full, recently purchased cylinder from Albertsons that was located at his home a short distance away. Todd

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment, are taken from the parties' submissions, and are undisputed unless otherwise indicated.

went home and returned to Burris's with a cylinder.  Burris placed it in a doorless

grill cabinet and connected the grill's hose to the cylinder valve.  The cylinder and

grill were connected by a "black nut" or "791 nut," which connects the valve on

the cylinder to the regulator on the barbeque.  Burris believed he fully tightened the

791 nut when he made the connection.  This fact, however, is disputed and at the

core of Cavagna's motion for summary judgment.

   Burris opened the valve on the cylinder, turned on a burner, and ignited the

grill.  He did not hear or smell gas leaking.  He activated the remaining burners,

closed the grill lid, and walked into the house.  He remained inside for a few

minutes, then returned to clean the heating grill but found a ball of fire emanating

from the cylinder.  A flame approximately one-foot high burned from the top of the

propane cylinder and rolled out of the lower cabinet, up the front of the grill.

Burris ran back into the house, called for Todd's help, and grabbed an oven mitt to

turn the cylinder valve off.  Todd also grabbed oven mitts and followed.  Todd

does not recall smelling gas but heard "hissing" that he assumed came from the

propane cylinder.

   Burris reached the grill and shut the valve off, turning the knob until he hit

the end point.  The parties dispute how quickly the flame diminished in relation to

the closing of the valve, but they agree the fire diminished to a small flame about

the size of a disposable lighter.  Todd blew the remaining flame out, then checked

3

to make sure the valve was fully turned off.  He could not determine the origin of the flames beyond the general area of the valve.

The regulator hose fell off the valve untouched, detaching the grill from the cylinder.  The valve opening appeared to be clear.  Todd heard a leaking noise, described as a "(r)eal low, quiet hiss," and he assumed it came from the cylinder. He could also smell a little bit of propane.  He told Burris they needed to move the cylinder off the deck into the yard.  He reached into the cabinet with his left hand and grabbed the cylinder.  He saw no flame.  But as he moved the cylinder, he heard a "mechanical sound," like a "mechanical click, pop."  The sound startled him.  He dropped the cylinder.  At some point in this moment he saw a flame, either before or after dropping the cylinder.  Todd reacted by leaping through the flame toward his wife Amber, who was across the deck, in an effort to remove her from harm's way.  Todd testified he thought the flame shot out ten feet parallel to the house.  Ultimately, the flame severely burned his leg, left arm and hand, and Amber injured her hip as she and Todd tumbled off the deck.  Both were hospitalized.

The Copenhavers filed the instant action on June 25, 2019.  (Doc. 1.) Copenhavers allege in the Third Amended Complaint that a leak in the rubber sealing gasket inside the valve allowed propane gas to escape and ignite from the lit grill.  Copenhavers attribute their injuries to a defective design in the valve and

defective materials in the sealing gasket, which compromised the seal and allowed the leak.  Copenhavers name Cavagna as the entity that designed, manufactured, and sold the valve; AmeriGas as the supplier and seller of the propane, cylinder, and Cavagna valve; and Albertsons as the seller and distributor of the propane cylinder and valve at issue in this case.

## II.    Legal Standard

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  If the moving party fails to discharge this initial burden, summary judgment must be denied; the court need not consider the non-moving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

/ / /

/ / /

6

### III.   Cavagna's Motion for Summary Judgment

Cavagna advanced two grounds in support of its motion for summary judgment.  (Doc. 134.)  First, Cavagna argued that undisputed facts contradict Copenhaver's theory of liability.  (Doc. 158 at 6, 21.)  Cavagna asserted that Burris's uncontested testimony establishes that he fully tightened the 791 nut when connecting the cylinder to the barbeque, and all experts in this case agree there would have been no propane leak from the valve if the nut had been completely tightened.  (*Id.* at 21.)  Second, Cavagna argued that since Burris did not perform a leak test when securing the cylinder to the 791 nut, he failed to abide by the warnings and instructions contained in the barbeque owner's manual.  (*Id.* at 26.)  Cavagna contends this failure represents the sole proximate cause of the accident. (*Id.* at 27-28.)

At oral argument, however, Cavagna candidly acknowledged that issues of fact exist that preclude summary judgment as to Copenhavers' theory of recovery. The Court agrees.  Copenhavers point to evidence which could contradict Burris's testimony and support the conclusion that the nut was not fully tightened.  For example, Copenhavers' experts believe the fire originated from a leak in the valve, which only occurred during testing when the valve was open 5/8ths of a turn from fully tight.  (Doc. 148-12 at 61, ¶ 13.)  Copenhavers' experts also testified at deposition that it is known "in the industry" that loosening of the nut can

7

inadvertently occur when moving the cylinder, causing a leak.  (Doc. 178-6 at 2: 162:18-23.)   Here, Burris moved the cylinder into the cabinet on the barbeque after securing the nut.  (Doc. 135-1 at 13: 65:13-15.)

Cavagna's expert counters that the nut did not loosen when moving the cylinder during his own testing.  (Doc. 199-1 at 3.)  He further believes that the Copenhavers experts' theory that the nut loosened 5/8ths of a turn is not possible. (*Id.*)

The credibility of Burris and the parties' experts, as well as the strength of the experts' theories and test results, are determinations for the trier of fact to resolve.  *Anderson*, 477 U.S. at 255; *Wood v. Old Trapper Taxi*, 952 P.2d 1375, 1381 (Mont. 1997) ("Juries have an uncanny ability to evaluate the credibility of a witness, especially an expert.").  Viewing the evidence in the light most favorable to Copenhavers, the Court finds genuine issues of material fact exist on the source of the leak that injured the Copenhavers.

Cavagna's second argument – that Burris's failure to perform a leak test and failure to abide by warnings or instructions was the sole cause of Copenhavers' accident and injury – also fails.  Causation is ordinarily a question of fact for the jury.  *Doran v. Smith*, 2019 WL 5816634 *3 (D. Mont. November 7, 2019).  "In rare circumstances, causation may be determined as a matter of law 'where reasonable minds can reach but one conclusion regarding causation.'"  *Id.*,

8

(quoting *Riley v. American Honda-Motor Co., Inc*, 856 P.2d 196, 132 (Mont. 1993). This case is certainly not one of those rare cases. If the jury finds that the fire was the result of a defective condition, it certainly could find the defect was both a cause-in-fact and proximate cause of the fire and resulting injuries sustained by the Copenhavers.

Therefore, the Court finds genuine issues of material fact clearly exist which preclude entry of summary judgment. Cavagna's motion for summary judgment should be denied.

## IV.    AmeriGas/ Albertsons' Motion for Partial Summary Judgment

AmeriGas and Albertsons move for partial summary judgment as to Copenhavers' punitive damages claim. (Doc. 136.) The Defendants argue that Copenhavers have no evidence to support the required elements to recover punitive damages. (Doc. 152 at 6.)

Copenhavers respond that there is "vast evidence" of AmeriGas's knowledge of the leaking valve seal at issue, and that Albertsons had notice of the defects but turned a blind eye to them. (Doc. 174 at 4, 8.)

Punitive damages are extraordinary by nature, should be cautiously applied, and require a showing of more than gross negligence. *Dunn v. Ancra Int'l LLC*, 2011 WL 4478478, at *5 (D. Mont. Sept. 26, 2011), *modified on reconsideration*, 2011 WL 8185102 (D. Mont. Sept. 28, 2011) (internal citations, quotations

omitted).  To award punitive damages, a defendant must be found guilty of actual fraud or malice.  Mont. Code. Ann. § 27-1-221(1).  Here, Copenhavers proceed under a theory of actual malice.  (Doc. 48 at 10, ¶ 35.)

Under Mont. Code Ann. § 27-1-221(2):

A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:

(a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or

(b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

A plaintiff is not required to prove actual malice at the summary judgment stage, but rather that a genuine dispute exists regarding the allegation.  *Wolfe v. BNSF Ry. Co.*, 2017 WL 710405, at *3 (D. Mont. Feb. 22, 2017) (citing *Hagen v. Dow Chemical Co.*, 863 P.2d 413, 420 (Mont. 1993)); *Byorth v. USAA Cas. Ins. Co.*, 2020 WL 5232485, at *2 (D. Mont. Sept. 2, 2020) (citing *Wolfe*).  The Court will analyze AmeriGas and Albertsons individually and in turn.

AmeriGas relies heavily on this Court's decision in *Dunn v. Ancra Int'l LLC* to support its motion.  In *Dunn*, the Court found that 14 known incidents of a product-related injury over 50 years is not sufficient "proof that would allow a reasonable trier of fact to find beyond any serious or substantial doubt" that the product at issue created a high probability of injury.  *Dunn,* 2011 WL 4478478, at

10

*6-7.  At oral argument, AmeriGas similarly cited statistics of the number Cavagna valves and AmeriGas cylinders sold versus the number of incidents of valve malfunction, to illustrate the low probability of injury due to the alleged defect. But these statistical comparisons are not set out in AmeriGas's statement of undisputed facts, as required by L.R. 56.1.  AmeriGas did file a supplemental declaration after Copenhavers filed their response brief and statement of disputed facts, which attaches exhibits mentioning the number of Cavagna valves sold per year and the number of locations in the United States where AmeriGas propane cylinders are available for purchase or exchange.  This leaves any statistical comparison with the number of known valve leaks incomplete in the record.  (*See* Docs. 198-3 at 2; 198-4 at 3.)  Further, the number of incidents used in oral argument appeared to relate to known claims or adverse events and not the prevalence of leaks in general.  The record simply does not support a conclusive finding on the prevalence of leaks from which this Court can make a determination at summary judgment as a matter of law.

Nevertheless, even if the incidents of valve leaks are miniscule when compared to the total number of valves and cylinders sold, Copenhavers have sufficiently raised an issue of material fact as to AmeriGas's knowledge of potential problems with valve seal failures and the apparent prevalence of those problems.  First, AmeriGas acknowledges that it was involved in three separate

11

Case 1:19-cv-00071-SPW   Document 232   Filed 07/28/21   Page 12 of 31

lawsuits that involved allegations of defective Cavagna valves. (Doc. 137 at ¶ 2.)

While AmeriGas was not found liable in any of the cases, it appears that its own

expert testified that the Cavagna valve in that case had the same defect

Copenhavers allege here. (Doc. 111-7 at 3-5.)

Second, AmeriGas was aware of concerns with Cavagna and similar valves

through its membership and participation in the National Fire Protection

Association and the National Propane Gas Association, whose proceedings often

discussed valve leak issues. (Doc. 175 at ¶ 2; *see e.g.* Docs. 109-2 at 7-11, 13-18,

19-20, 21, 26-27, 28, 29; 178-3 at 16-17.) David Hedrick of AmeriGas, for

example, was copied on a September 4, 2015 email relating to "1836 Face Seals"

that announced an action item approved by the NPGA Executive Committee:

> Working through task force Tvfc-1836 "CGA 791 Connections," the
> TS&S Committee discussed reported incidents of CGA 791 valve seals
> leaking after cylinders were connected to a grill or other appliance.
> These seals have shown to be wearing over time and are not replaceable
> on the valves. The entire valve must be removed and replaced with a
> new valve.

(Doc. 109-2 at 34.)

Other AmeriGas representatives were also included in email discussions

regarding seal failures on valves and ways in which early seal failure may be

addressed or remedied. (Doc. 175 at 13-14, citing Doc. 178-3.) Through these

email exchanges, it appears AmeriGas representatives had knowledge of risks

associated with leaking gas valves; that the risk of seal failure tended to increase as

12

the valves age; that the seal failures may be due to defective materials; and that the risks were at least prevalent enough to consider a recall of the valves and/or cylinders as an option. (Doc. 175 at 12-14.) These facts are sufficient to raise an issue of material fact with respect to Copenhavers' punitive damages claim against AmeriGas, and summary judgment would not be appropriate.

As to Albertsons, the Court finds the Copenhavers have failed to raise genuine issues of material fact as to Albertsons' knowledge of facts regarding the alleged defect in the valve; thus, summary judgment is appropriate as to their punitive damages claim against Albertsons. Troy Darmody, Director of Safety for Albertsons' Intermountain Region, testified to Albertsons' lack of knowledge: "Albertsons was not/is not aware of an existing defect in the product such that it presents an unreasonable safety hazard to our customers, or have not been notified by the supplier that such a safety – or such a defect exists." (Doc. 178-1 at 4: 42:7-12.) Darmody later reiterated: "To Albertsons' knowledge, we have not been notified by the supplier that there is an existing product defect that presents a safety risk to our customers." (*Id.*: 43:22 – 44:1; *see also* 49:22-25.) Geri Cullinen also testified that in her 20 years as an Albertsons' store manager in Glendive, she could not recall one incident of an employee or customer reporting a propane tank leak. (Doc. 152-1 at 9: 20:7-18.) Having shown a lack of knowledge, the burden shifts to Copenhavers to raise a factual dispute.

Copenhavers have not done so in briefing or at oral argument.  Copenhavers cite to Darmody's deposition and represent that he testified there were "'two propane related issues per year over the last ten years' related to AmeriGas cylinders in the Intemountain [*sic*] Region alone."  (Docs. 174 at 9; 175 at ¶ 1, citing 178-1 at 4-5: 45-48.)  First, Copenhavers' citation does not support their contention; the cited pages do not contain a discussion of "propane related issues." But even if Darmody testified to that effect at some point in his deposition, Copenhavers do not specify the nature of the "propane related issues" he refers to, and whether they relate in any way to the Cavagna valves, valves on cylinders in general, or even to leaking propane gas.  Thus, the Court finds summary judgment is appropriate as to Copenhavers' punitive damages claim against Albertsons.

Therefore, the Court recommends the motion for summary judgment as to punitive damages be denied as to AmeriGas and granted as to Albertsons.

## V.    Copenhavers' Motions for Partial Summary Judgment

Copenhavers have filed three motions for partial summary judgment as to: (1) affirmative defenses other than misuse and assumption of risk; (2) the affirmative defenses of misuse and assumption of risk; and (3) liability.  (Docs. 140, 142, 144.)  The Court will address each in turn.

/ / /

/ / /

14

## A.     Affirmative Defenses Other Than Misuse and Assumption of Risk

Copenhavers request partial summary judgment as to Defendants'
affirmative defenses, other than misuse and assumption of risk, because they are
not permitted under Montana law.  (Doc. 140.)

Under Mont. Code Ann. § 27-1-719(5), only the affirmative defenses of
misuse and assumption of risk are allowed in strict liability defective design or
manufactured product claims.  *Kenser v. Premium Nail Concepts, Inc.*, 338 P.3d
37, 43 (Mont. 2014); *Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1224
(D. Mont. 2015) ("The only defenses available in Montana strict liability actions
are statutory.") (internal citation omitted).

Defendants conceded the point in briefing[2] and at oral argument but assert
a reservation of the right to introduce evidence relative to other defenses which
may be relevant to the issue of causation.  (*See e.g.* Doc. 181 at 5.)  Defendants
agreed, however, that those evidentiary matters would be reserved for trial, and
that summary judgment of all affirmative defenses as to liability other than misuse
and assumption of risk is appropriate.

Therefore, the Court recommends Copenhavers' motion as to all affirmative
defenses relating to liability other than misuse or assumption of risk be granted.

---

[2] AmeriGas and Albertsons did not file responses but instead incorporate and join
in Cavagna's arguments.  (Doc. 185 at 6.)

15

**B.     Misuse and Assumption of Risk**

Copenhavers also move for partial summary judgment with respect to Defendants' affirmative defenses of misuse and assumption of risk. (Doc. 142.) With respect to these motions, the Court is mindful that it is Defendants' burden to prove the affirmative defenses of misuse and assumption of risk at trial. *Speaks*, 118 F. Supp. 3d at 1224. Where, as here, the moving party will not bear the burden of persuasion on an issue at trial, it nevertheless "has both the initial burden of production and ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party can carry its burden of production in those circumstances by showing that the "nonmoving party does not have enough evidence on an essential element to carry its ultimate burden of persuasion at trial." *Id.* If the moving party does so, "the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. The moving party is entitled to summary judgment if the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the ultimate burden of proof." *Celotex*, 477 U.S. at 323.

Applying these principles here, the Court will address each defense in turn.

/ / /

/ / /

16

## 1. Misuse

A defendant in a strict products liability claim may assert the affirmative defense that "[t]he product was unreasonably misused by the user or consumer and the misuse caused or contributed to the injury."  Mont Code Ann. § 27-1-719(5)(b).  The Montana Supreme Court has determined that, under the plain language of the statute, the defense is only available if the product was "unreasonably misused."  *Lutz v. National Crane Corp.*, 884 P.2d 455, 459 (Mont. 1994).  The court further determined that if a manufacturer reasonably foresees that its product will be misused in a certain way, use of the product in that manner is not "unreasonable" under the statute.  *Id.*  "In short, reasonably foreseeable misuse is reasonable misuse."  *Id.*  In *Kenser*, the Montana Supreme Court explained that "if it is reasonably foreseeable to a defendant that its product can be or is being used in a specific manner, and a consumer is injured by using the product in that manner, the defendant cannot argue that the plaintiff had misused its product."  *Kenser*, 338 P.3d at 43.  The key inquiry is foreseeability.  *Hart-Albin Co. v. McLees Inc.*, 870 P.2d 51, 53 (Mont. 1994).  Under Montana law, "the question of misuse may go to the jury only if the misuse was not reasonably foreseeable."  *Kenser*, 338 P.3d at 489.

Copenhavers argue that Todd Copenhavers' conduct was foreseeable and therefore the defense of misuse is not available under Montana law.  (Doc. 143 at

17-19, 20-30.)  In support, Copenhavers state that Cavagna was asked in discovery to disclose the basis for its affirmative defenses and Cavagna responded by incorporating a response to another interrogatory, which stated that neither Burris nor Copenhaver read or followed instructions and warnings for the barbeque or cylinder; Copenhaver did not insure that Burris followed those warnings; neither of them ensured that all components of the barbeque were present and in use; and that their actions and inactions "when they became aware of the incident, were contrary to the instructions in the BBQ manual, cylinder sleeve and good sense." (Doc. 143 at 13-14.)

Copenhavers assert that none of these alleged failures may serve as a basis for the affirmative defense of misuse under Montana law.  Copenhavers first correctly point out that under Mont. Code Ann. § 27-1-719(5) "contributory negligence is not a defense to the liability of a seller, based on strict liability in tort . . .."  Therefore, Todd's alleged negligence in responding to the incident, or his failure to otherwise use reasonable care, does not support a misuse defense.  The "issue in products liability cases is not the conduct of the 'reasonable person,' but the condition of the product."  *Malcolm v. Evenflo Co.*, 217 P.3d 514, 521 (Mont. 2009).  To put the focus on the reasonableness of Todd's conduct attempts "to interject negligence concepts into this design defect case."  *Id.* (quoting *Lutz*, 884 P.2d at 465.)

Second, Copenhavers also correctly assert that the conduct of Burris, as an unnamed third-party, cannot be asserted as a defense to diminish Cavagna's liability.  As determined in *Bell v. Glock*, 92 F.Supp.2d 1067, 1069 (D. Mont. 2000), a manufacturer's attempt to apportion liability to an unnamed third-party in a strict product liability case violates Montana's prohibition against the "empty chair defense."

Last, Copenhavers assert that all conduct that was warned against was foreseeable.  In support, Copenhavers cite this Court's decisions in *Dunn v. Acura Int'l LLC*, 2011 WL 4478478 (D. Mont. Sept. 26, 2011) and *Speaks v. Mazda Motor Corp.*, 118 F.Supp.3d 1212 (D. Mont. 2015) for the proposition that a warning included with a product can establish that a particular use warned against is foreseeable.  Therefore, Copenhavers argue that Cavagna's reliance on warnings to show misuse is misplaced, and that Defendants have presented no other evidence in this case which would tend to establish that any misuse of the product by Todd Copenhaver was unforeseeable.

In its response, Cavagna[3] makes only a passing reference to the defense of misuse, but thereafter fails to rebut Copenhavers' arguments or present any facts or argument that any alleged misuse was unforeseeable.  The only argument

---

[3] Again, AmeriGas and Albertsons did not file responses but instead incorporate and join in Cavagna's arguments.  (Doc. 185 at 6.)

presented by Cavagna which may go to the issue of misuse consists of a list of warnings that Burris and Todd allegedly failed to heed in using the barbeque and gas cylinder. (Doc. 182 at 10.) But, as pointed out by Copenhavers, this argument is not helpful to Cavagna on the issue of foreseeability. To the contrary, this Court has held that "evidence of foreseeability can be found in the warnings that [the manufacturer] included with" the product. *Dunn,* 2011 WL 4478478, at *3. This principle was later applied by the Court in *Speaks* in granting summary judgment on the misuse defense. *Speaks*, 118 F.Supp.3d at 1224. In *Speaks*, Mazda argued that the plaintiff misused her seat belt by routing the strap under her armpit, rather than over her shoulder. *Id.* The Court rejected the argument and found it "is abundantly clear that [the plaintiff's] alleged 'misuse' of the restraint system by routing the shoulder belt under her arm was foreseeable to Mazda. In fact, Mazda actually foresaw it. In the owner's manual for the subject Protege, Mazda specifically warned against routing the shoulder belt under the arm." *Id.* Thus, the fact that the barbeque manufacturer may have included warnings in its manual, or that certain warnings were included on the cylinder itself, does not set the bar for unreasonable misuse. Under *Dunn* and *Speaks*, such warnings would only tend to support the Copenhavers' argument that the use was foreseeable.

Therefore, the Court finds that Copenhavers have shown that Cavagna does not have sufficient evidence on an essential requirement of its misuse defense.

Accordingly, the Court will recommend that Copenhavers' motion as to

Defendants' misuse defense be granted.

### 2.   Assumption of Risk

Assumption of risk is also a viable defense to a strict product liability claim

under Mont. Code Ann. § 27-1-719(5)(a), which provides that a defendant may

assert an affirmative defense that "[t]he user or consumer of the product discovered

the defect or the defect was open and obvious and the user or consumer

unreasonably made use of the product and was injured by it."

The Montana Supreme Court has interpreted this section narrowly.  In *Lutz*

*v. National Crane Corp,* for example, Lutz and his supervisor were using a crane to

retrieve drilling pipe that had spilled from a semi-trailer.  *Lutz*, 884 P.2d at 457.

Lutz's job was to hook metal chains from the crane to the pipe and help guide the

pipe to a trailer for hauling.   Lutz and his supervisor were aware of overhead

electrical lines; they were aware that the crane cable being used did not have an

insulated link; and they were aware of the potential for electrocution.

Nevertheless, they felt a portion of the pipes could be safely removed with use of

the crane; the remainder would be dragged out from underneath the lines using a

truck.  While moving one of the pipes, however, the cable from the crane contacted

the power line, electrocuting Lutz.  *Id.*

The defendant asserted both affirmative defenses of misuse and assumption of risk.  *Id.*  With respect to the latter, the Montana Supreme Court made clear that "[a]ssumption of risk is analyzed under a subjective standard rather than under the objective 'reasonable person' standard."  *Id.* at 461.  Under this standard, the Court said the defendant must "prove that Lutz actually knew that when the pick was commenced the crane cable would come in contact with the live electrical line; that he knew if that happened, he would suffer serious injury or death; and that, knowing that, he voluntarily exposed himself to that danger."  *Id.*

The Court also made clear that the second part of the statute must be satisfied; *i.e.*, that after discovering the defect "the user or consumer *unreasonably made use* of the product and was injured by it."  *Id.* (emphasis in original).  Just as with the unreasonable use analysis for the misuse defense, if the use is reasonably foreseeable to the manufacturer, it cannot be considered unreasonable use for purposes of assumption of risk.  *Id.* at 462.

Copenhavers argue that assumption of risk is not available because there is no evidence to show that Todd's conduct was unforeseeable.  (Doc. 143 at 30.) Additionally, Copenhavers contend there is no evidence to establish the subjective knowledge requirement.  (*Id.*)

Cavagna argues that Todd's repeated failure to adhere to product warnings supports their defense of assumption of risk. (Doc. 182 at 7.) Cavagna also argues that Nicole Burris's testimony raises issues of fact. (*Id.* at 8.)

Nicole Burris's testimony does differ from Todd Copenhaver's testimony as to the events immediately preceding and following the ignition of flames from the cylinder. These differences are not material, however, since there is insufficient evidence for a jury to find assumption of risk under either scenario.

Todd testified that after the flames were initially extinguished from the cylinder, he heard a quiet hissing and could smell propane. (Doc. 180 at ¶ 17.) He recognized there was a risk of fire or explosion and said "[w]e have to get this out into the yard." (*Id.*) He reached under the barbecue and pulled the tank out. (*Id.*) As he did so, he heard a mechanical click-pop sound and dropped the tank. (*Id.*) Flames then started shooting out of the valve, and Todd tried to get out of the way. (*Id.*) He then heard Amber screaming and he ran to her and pulled her off the porch. (*Id.*) Todd was burned and Amber was injured in this process. (*Id.* at ¶ 18.) As to his knowledge that a fire would result from his handling of the cylinder, he testified: "If I would have known that it was going to do that, I would never have pulled the tank out." (Doc. 180 at ¶ 19). He said: "In my mind, I was getting it away from the house and the barbeque. And in my mind, I was making it safer

than it would be if it was sitting right there next to the house .... My whole family was inside at that point." (*Id.*)

Under Todd's version of events, there is no evidence that would allow a reasonable trier of fact to find assumption of risk under *Lutz's* subjective standard. As made clear in *Lutz*, Cavagna would be required to prove: (1) Todd had knowledge of the defect and that use of the product would result in the ignition of a fire; (2) that if the fire occurred Todd knew he would suffer some injury; and (3) that Todd voluntarily proceeded anyway. See, *Dunn*, 2011 WL 4478478, at *4 (summarizing *Lutz's* holding). Defendants have produced no evidence which would create an issue of fact as to these requirements.

Although not argued in its brief, Cavagna points out in its statement of disputed facts that Todd was very experienced in the use of propane, and he was aware that escaping gas was flammable and could cause an explosion. (Doc. 180 at ¶ 197-98.) He also heard a hissing sound coming from the cylinder after the initial fire was extinguished. (*Id.* at ¶ 199.) From this, a reasonable trier of fact could conclude that Todd was aware of a potential risk of fire. But establishing that a plaintiff was aware of a potential risk is not sufficient. It must be established that the plaintiff knew that the malfunction would happen; knew that they would be injured by the malfunction; and nevertheless, proceeded to use the product. *Dunn,*

2011 WL 4478478, at *5 ("Lutz requires something more than a showing that [plaintiff] knew of facts giving rise to danger.")

Certainly, it could be argued that Todd's actions were not prudent, and that his conduct was negligent. But negligence is clearly not sufficient. There have been no facts presented that would allow a reasonable juror to conclude that Todd knew the cylinder would start on fire and burn him, as *Lutz* requires. ("Lutz did not *unreasonably* make use of the product, unless, of course, he *knew in advance* that the crane cable *would come in contact* with the power line." *Lutz*, 884 P.2d at 461 (emphasis in original)).

Contrary to Todd's testimony, however, Nicole Burris testified that when she came out of the house after the initial fire was extinguished, she observed the cylinder on the back porch. (Doc. 184-5 at 7: 61:5-14.) The cylinder was not on fire, and it was situated a sufficient distance from the barbeque that someone could walk between the cylinder and barbeque. (*Id.*, and at 7-8: 61:25 – 62:6.) She testified there was a loud bang/pop, and she then observed the cylinder on the ground spewing flames. (*Id.* at 8: 62:7-25, at 9: 63:1-6.) She said that neither Todd nor Amber Copenhaver were in danger at that point, and both could have safely retreated from the porch. (*Id.* at 9: 63:22 – 64:1, and at 15: 80:14-21.) She recalled that Todd was standing on the other side of the porch next to Burris, and Amber was standing in front of Nicole by the door to the house. (*Id.* at 6: 60:2-4,

10-14, 19.)  Nevertheless, she said Todd ran across the length of the porch, through the fire, and tackled Amber over the side of the porch railing.  (*Id.* at 9-10: 63:24 - 64: 1, at 11: 65:15-25, at 12: 66:22-25.)  According to Nicole, Todd was burned when he ran through the flames, and Amber was injured when she was tackled. (*Id.* at 13: 67:1-21.)

Cavagna argues that Nicole's testimony that Todd "inexplicably ran through the fire" creates an issue of fact on assumption of risk.  (Doc. 182 at 6-9.)  But the assumption of risk defense fails under this scenario for another reason.  As outlined above, the assumption of risk provision has two requirements: "[1] The user or consumer of the product discovered the defect or the defect was open and obvious and [2] the user or consumer unreasonably made use of the product and was injured by it."  Mont. Code Ann. § 27-1-719(5)(a).

Here, the trier or fact could conclude that Todd was aware of the defect or the defect was open and obvious after the initial fire occurred.  But the second requirement under the statute provides that the user or consumer must unreasonably make use of the product after discovering the defect.  Under Nicole's testimony, Todd was not making any use of the cylinder when the event occurred. Nicole recalls that he was standing next to Burris near the steps to the porch and was not interacting with the cylinder in any way when the second fire started. (Doc. 184-5 at 9: 63: 7-21.)  She recalls that the cylinder was just sitting on the

porch when it apparently spontaneous fell over and began shooting flames. (*Id.* at 6: 60:2-9, at 7: 61:1-14, at 8: 62: 11-17.)  Under Nicole's testimony, Todd was not using the cylinder at the time and did not make any use of the cylinder thereafter. Thus, he did not unreasonably make use of the cylinder after discovering the defect, as the statute requires.

Therefore, regardless of whether the jury chooses to believe Todd or Nicole's version of events, the assumption of risk defense is not applicable under Montana law.  The Court recommends the motion as to assumption of risk be granted.

### C.    Liability

Copenhavers' final motion is a motion for partial summary judgment as to liability.  (Doc. 144.)  Copenhavers argue there are only two theories in this case regarding how the fire started.  (Doc. 146 at 5.)  Copenhavers' experts believe the fire originated from a leak in the valve's connection to the regulator on the grill. (*Id.* at 4.)  Defendants' experts disagree and assert that the leak came from the location where the valve is connected to the cylinder itself, called the "spud."  (*Id.*) Copenhavers assert that, regardless of which theory is correct, the product was in a defective unreasonably dangerous condition when it was sold to Todd Copenhaver. (*Id.* at 5.)  Therefore, Copenhavers argue there is no genuine issue of material fact on liability, and they are entitled to partial summary judgment.  (*Id.*)

Under Montana law, a prima facie case of strict products liability consists of the following three elements:

(1) The product was in a defective condition, "unreasonably" dangerous to the user or consumer;

(2) The defect caused the accident and injuries complained of; and

(3) The defect is traceable to the defendant.

*Winters v. Country Home Prod., Inc.*, 654 F. Supp. 2d 1173, 1180 (D. Mont. 2009) (citing *Meyer v. Creative Nail Design, Inc.*, 975 P.2d 1264, ¶ 21 (Mont. 1999)).

The Court finds that genuine issues of material fact exist as to the second and third elements of causation and traceability. As set forth above, the parties' experts disagree as to the cause of the leak. The final report from Copenhavers' experts details their testing, analysis, and conclusion that the leak originated from a defective Cavagna face seal. (*See* Docs. 147 at ¶¶ 20-34; 148-12; 178-7; 178-8.) The report concluded, *inter alia*, that numerous defects caused the leak, including the valve's 2-slot design and the check valve gasket's (#4) materials and deformation. (Doc. 148-12 at 61, ¶¶ 12-14, 21.)

Cavagna, on the other hand, disputes these conclusions with the affidavit of Cavagna President Richard J. Darche, and two experts of its own. (Docs. 148-14 at 36-38; 180 at ¶¶ 71-84.) Darche states that the tested valve was damaged in the fire, thus the test results showing a leak was a result of the initial fire, not a defect. (*Id.* at ¶¶ 79-84; 183 at 27.) Cavagna's experts also reject the conclusions of

28

Copenhavers' experts point by point and posit that it is the spud that leaked and caused the fire that ultimately injured Todd and Amber. (*See e.g.*, Doc. 148-14 at 32, 36-38.)

Again, the credibility of these witnesses as well as the strength of their testing, analysis, and conclusions, are determinations for the trier of fact to resolve. Cavagna has clearly raised genuine issues of material fact as to the second element of causation.

Moreover, the parties' dispute over the source of the leak (valve vs. spud) is also critical to the third element, or traceability of the defect to the individual defendants. The jury's determination of the source of the leak will inform their determination of which Defendant may be liable, if any liability is found. If the Cavagna valve is found to be defective, for example, the jury could potentially find all Defendants liable. In that event, however, AmeriGas and Albertsons argue they will have a right to seek indemnification from Cavagna. (*See e.g.*, Doc. 120 at 25.) Conversely, if the connection at the spud is found to have caused the fire, Cavagna may not be found liable. The jury may find the defect had nothing to do with the valve itself, as opposed to how the valve was connected to the cylinder after it left Cavagna's possession and control. In that event, AmeriGas and Albertsons may still be found liable and have no right to seek indemnification from Cavagna. Finally, the jury may find that neither theory is credible, and determine that the fire

29

was caused by some other factor.  These factual issues are for a jury to determine. *Anderson*, 477 U.S. at 255; *Wood*, 952 P.2d at 1381.

In sum, the Court finds genuine issues of material fact exist as to liability. Therefore, the Court recommends Copenhavers' motion be denied.

## VI.    Conclusion

Based on the foregoing findings, the Court RECOMMENDS the following:

1.    Cavagna's motion for summary judgment (Doc. 134) be DENIED;

2.    AmeriGas and Albertsons' motion for partial summary judgment as to punitive damages (Doc. 136) be GRANTED as to Albertsons and DENIED as to AmeriGas;

3.    Copenhavers' motion for partial summary judgment as to affirmative defenses other than misuse and assumption of risk (Doc. 140) be GRANTED;

4.    Copenhavers' motion for partial summary judgment as to the affirmative defenses of misuse and assumption of risk (Doc. 142) be GRANTED; and

5.    Copenhavers' motion for partial summary judgment as to liability (Doc. 144) be DENIED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the

parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.  D. Mont. Local Rule 72.3.

**IT IS ORDERED**.

DATED this 28th day of July, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge